**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| VIPULKUMAR SATISHBHAI PATEL, | |
| Petitioner, | |
| v. | Case No. 26-cv-03294-SRB |
| JIM C. ARNOTT, et al., | |
| Respondents. | |

## ORDER

Before the Court is Petitioner Vipulkumar Satishbhai Patel's ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (Doc. #1.) As set forth below, the Petition is GRANTED.

Petitioner alleges that he fled India and entered the United States in December 2022 with the intention of seeking protection. Petitioner was taken into custody by the Department of Homeland Security after presenting himself at the border in Arizona. On December 22, 2022, ICE paroled Petitioner out of custody. Petitioner is now married and is a father to one child, with another child due to be born in December 2026.

In May 2023, Petitioner submitted his asylum application to the USCIS Chicago Asylum Office. At that time, because he had previously been paroled from ICE custody, he was not placed in removal proceedings. On May 12, 2026, Petitioner and his family appeared for an immigration check-in at the Chicago ERO office. During the check-in, Petitioner was separated from his family and taken into ICE custody.

Petitioner argues that his continued detention violates his due process rights. Respondents argue that to the extent Petitioner asserts a procedural due process claim, that claim fails. In particular, the Government argues that "by enacting Section 1225, Congress sought to eliminate the preferential treatment of aliens who violate the country's immigration laws by entering illegally

1

and evading detection[1]. . . . [Petitioner's] theory of procedural due process is incompatible with [case law]. [Petitioner] received (and is receiving) all the process due to him under Section 1225; in this case, that is due process of law. (Doc. #7, p. 8.) (quotation omitted).

In support of this argument, the Government cites, among other cases, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). In *Thuraissigiam*, the Supreme Court rejected a noncitizen's argument that his expedited removal proceeding violated due process and held that the noncitizen "ha[d] only those rights *regarding admission* that Congress has provided by" § 1225. *Id.* (emphasis supplied).

Upon review, the Court rejects Respondents' arguments. "As other courts addressing similar arguments have noted, *Thuraissigiam* dealt with a due process challenge to the sufficiency of § 1225's process for expedited removal—not with a challenge to prolonged mandatory detention." *Alvarez v. Noem*, No. 4:26-CV-00729, 2026 WL 522322, at * 4 (S.D. Tex. Feb. 25, 2026) (citing cases). "Since *Thuraissigiam* did not address whether noncitizens mandatorily detained under § 1225(b) have a constitutional due process right to challenge the fact or length of their detention, the Court finds that *Thuraissigiam* does not foreclose Petitioner's due process claim." *Id.* (citation and quotation marks omitted) (cleaned up). The Court agrees with this case law.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Due process is flexible . . . [and] calls for such procedural protections as the particular situation demands." *Jennings v. Rodriguez*, 583 U.S. 281, 312-315

---

[1] The Court notes that this policy argument is inapplicable here because Petitioner was not evading detection. Since presenting himself at the border in Arizona and being placed on parole in 2022, Petitioner has applied for asylum, obtained work authorization, and applied for a U visa. (Doc. #1, pp. 5, 12.)

(2018). To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. at 335. Courts must consider the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

The first *Mathews* factor weighs in favor of Petitioner. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action"). Petitioner has resided in the United States since December 2022. He is married and is a father to one child, with another child due to be born in December 2026.

Petitioner's liberty interest is further strengthened by the fact that, in December 2022, Respondents decided to release him from detention on parole. "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Here, Respondents do not argue that Petitioner failed to meet the conditions of his release. In fact, Respondents arrested Petitioner while he was appearing for an immigration check-in at the Chicago ERO office. Thus, the Court finds that Petitioner has a strong liberty interest in his freedom from detention.

3

The second *Mathews* factor, the risk of erroneous deprivation, also weighs in favor of Petitioner. "The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen 'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons' and that the noncitizen is 'likely to appear for any future proceeding.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting 8 C.F.R. § 1236.1(c)(8)). Release on bond or parole "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Respondents do not contend that Petitioner violated his conditions of release or otherwise presents a danger or a flight risk. Instead, Respondents rely solely on the government's change in policy to justify his re-detention. The Court finds that the second factor weighs in favor of Petitioner.

Under the third *Mathews* factor, even a weighty private interest must be balanced against the government's interest. Respondents have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live. But this interest is not served by re-detaining noncitizen "applicants for admission" whom the government previously determined were not flight risks or dangers to the community without a showing of changed circumstances. "[T]he fiscal and administrative burdens of providing noncitizens in these circumstances with some form of hearing pales in comparison with the burdens of re-detaining thousands of noncitizens who were previously released on recognizance." *Alvarez*, 2026 WL 522322, at * 6. Thus, the third factor weighs in favor of Petitioner.

Given the weight of the liberty interests at stake and the lack of changed circumstances since Respondents released Petitioner on parole, the Court finds that the proper remedy for the violation of Petitioner's due process rights is immediate release from custody. *See Lopez Benitez*

4

*v. Francis*, 795 F. Supp. 3d 475, 499 (S.D.N.Y. 2025) (ordering immediate release from custody after determining that the petitioner's continued detention violated procedural due process); *see also Alvarez*, 2026 WL 522322, at * 6.

Based on the above, and on the full record before the Court, **IT IS HEREBY ORDERED THAT:**

1. Petitioner's Petition for a Writ of Habeas Corpus (Doc. #1) is **GRANTED**.

2. Respondents shall immediately release Petitioner in Missouri, but no later than 48 hours from the date of this Order.

3. Prior to Petitioner's release, Respondents must first notify Petitioner's legal counsel within two hours of his impending release and include the location of his release and approximate release time.

4. When Petitioner is released, Respondents must return to him any property, personal effects, and documents that they have taken from him, including identity documents, foreign issued identity documents, and immigration documents.

5. Respondents shall confirm Petitioner's release with the Court within 72 hours from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: <u>May 28, 2026</u>            <u>*s/Stephen R. Bough*            </u>
                                     Stephen R. Bough
                                     United States District Judge

5